**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

AUGUSTA SANDINO CHRISTIAN
NAMPHY, DREAM DEFENDERS,
NEW FLORIDA MAJORITY,
ORGANIZE FLORIDA, and
FLORIDA IMMIGRANT
COALITION,

      Plaintiffs,

      v.

RON DESANTIS, in his official
capacity as Governor of the State of
Florida, and LAUREL M. LEE, in her
official capacity as Florida Secretary of
State,

      Defendants.

Case No. _____

**COMPLAINT FOR EMERGENCY INJUNCTIVE
AND DECLARATORY RELIEF**

**INTRODUCTION**

1.     On October 5, 2020, the last day to register to vote in the upcoming

Presidential Election, Florida's online voter registration ("OVR") system crashed,

going offline for several hours. This followed several days during which the

system crashed intermittently. Would-be Florida voters attempting to register to

vote through the system were faced with error messages instead of successful voter registrations. This is not the first time the system has crashed; the State has long been aware of its vulnerabilities, particularly on the final day of registration when peak usage occurs. This time, however, the consequences are more severe than ever, as Floridians have depended on OVR at a time when the deadly coronavirus pandemic requires them to quarantine at home. The result of the state's failure to keep the OVR system operational was that many Floridians were unable to register to vote at all. Without action by this Court, these aspirational voters will be unable to cast a ballot in the Presidential Election and will be deprived of their fundamental rights under the First and Fourteenth Amendments.

## PARTIES

### Plaintiffs

2.     Plaintiff DREAM DEFENDERS is a Florida nonprofit corporation with its principal office in Miami-Dade County, Florida. The organization was established in 2012 following the killing of teenager Trayvon Martin and is directed by Black and Brown Youth. Dream Defenders uses training and organizing of youth and students to confront structural inequality. The organization conducts civic engagement activities across the state of Florida including voter registration and get out the vote efforts. The failure of the OVR system and the Defendants' failure to extend the voter registration deadline

hinders the organization's efforts to secure voter participation and impacts its members who need to register to vote or update their voter registrations.

3.     Plaintiff NEW FLORIDA MAJORITY, INC. ("NewFM") is a Florida non-profit corporation and membership organization with its principal office in Miami-Dade County, Florida. Founded in 2009, NewFM is dedicated to organizing, educating, and mobilizing disempowered communities in Florida to win equity and fairness throughout the State. NewFM's central focus is to expand democracy by ensuring that every person eligible to vote, regardless of party affiliation, is able to exercise his or her fundamental and constitutionally protected right to vote. To achieve its goal, NewFM works with individual members and organizations across the state of Florida engaged in civic and democratic endeavors to assist underserved communities in voter registration, voter education and get out the vote efforts. NewFM has regional focuses in North Florida (Duval and Leon Counties) and South Florida (Miami-Dade, Broward, and Palm Beach Counties). It has permanent offices in Miami, Fort Lauderdale, and Jacksonville, and voter registration offices in Leon, Gadsden, and Palm Beach Counties. The failure of the OVR system and the Defendants' failure to extend the voter registration deadline hinders the organization's efforts to secure voter participation and impacts its members who need to register to vote or update their voter registrations.

3

4.     Plaintiff ORGANIZE FLORIDA is a community-based, nonprofit member organization with its principal offices in Orange County, Florida. Its membership consists of low- and moderate-income people dedicated to the principles of social, racial, and economic justice and the promotion of an equal and fair Florida for all. Organize Florida's members bring communities together to join in the fight for safe neighborhoods, healthy families, quality education, good jobs, justice, equality and a more representative democracy. Organize Florida's major campaigns have included supporting children and families and increasing Latinx voter turnout. The organization is committed to exposing injustice and holding Florida's leaders accountable. The failure of the OVR system and the Defendants' failure to extend the voter registration deadline hinders the organization's efforts to secure voter participation and impacts its members who need to register to vote or update their voter registrations.

5.     Plaintiff Florida Immigrant Coalition ("FLIC," and together with Dream Defenders, NewFM, and Organize Florida, "Organizational Plaintiffs") is a Florida non-profit corporation representing over 66 diverse dues-paying member organizations in over twenty Florida counties, including community-based organizations committed to empowering their members and communities through civic engagement. FLIC's mission is to amplify the power of immigrant communities, to address the root causes of inequality, and to defend and protect

basic human rights, including the ability to labor, live and love without fear. To achieve its goal, FLIC supports democratic participation by encouraging naturalization, providing voter registration assistance to immigrant citizens, and leading civic engagement efforts throughout the state.

6.     Plaintiff AUGUSTA SANDINO CHRISTIAN NAMPHY is a resident of Broward County and is a first-time registrant. He attempted to register to vote using the OVR system on October 5, 2020, but because of system errors and crashes he was unable to register before the midnight voter registration deadline.

7.     Defendants' failure to extend the voter registration deadline will frustrate Organizational Plaintiffs' missions by interfering with their efforts to register voters and expand participation in the upcoming presidential election, and has already deprived Plaintiff Namphy of the opportunity to register and vote in the upcoming Presidential Election.

**Defendants**

8.     Defendant RON DESANTIS is sued in his official capacity as Governor of the State of Florida. Defendant DeSantis is a person within the meaning of 42 U.S.C. § 1983 and acts under color of state law. As Governor of Florida, Defendant DeSantis is the state's chief executive officer and is

responsible for the administration of all state laws, including those pertaining to voter registration and elections.

9.      Defendant LAUREL M. LEE is sued in her official capacity as Florida Secretary of State. Defendant Lee is a person within the meaning of 42 U.S.C. § 1983 and acts under color of state law. Pursuant to Florida Statute § 97.012, the Secretary of State is the chief elections officer of the State and is responsible for the administration of state laws affecting voting and voter registration.

## JURISDICTION

10.     Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution.

11.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States, because Plaintiffs bring this action to redress the deprivation, under color of State law, of rights, privileges, and immunities secured by the Constitution of the United States and federal law, and because Plaintiffs bring this action to secure equitable relief under federal law providing for the protection of voting rights.

12.     This Court has personal jurisdiction over Defendants, who are sued only in their official capacity as officers of the State of Florida.

13.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants have their place of business in Tallahassee, and a substantial part of the events that gave rise to Plaintiffs' claims occurred in this judicial district.

## STATEMENT OF FACTS

14.     Pursuant to Fla. Stat. § 97.0525, Florida has offered online voter registration since October 2017. In 2018 and 2019, OVR accounted for approximately 17% and 8.5%, respectively, of all new voter registrations submitted in the state.

15.     In 2020, the COVID-19 pandemic has significantly curtailed other methods of registration, leading Floridians to rely much more heavily on OVR, which has become an even more critical point of entry for civic participation than usual during the COVID-19 pandemic. As of August 31, 2020, 32% of new registrations the state had received came from the OVR system.

16.     The COVID-19 pandemic has also shifted the voter registration efforts of advocacy organizations, including Organizational Plaintiffs, toward online registration. Over the past few months, Organizational Plaintiffs have made a sustained effort to connect hundreds of thousands of voters with Florida's online voter registration system.

17.    For example, NewFM suspended all of its in-person voter registration operations immediately following the March 17, 2020, Presidential Preference Primary, as Florida went into lockdown due to the COVID-19 pandemic. Florida's OVR site became the organization's only option for its voter registration work. NewFM shifted its canvassing teams to use the OVR site.

18.    Likewise, Dream Defenders built a new web portal to connect visitors to the organization's website to the OVR system, and invested approximately $200,000 in a new phone banking initiative that allows members at a phone bank event to call unregistered young Floridians to encourage them to register using Florida's OVR system.

19.    Similarly, Organize Florida has shifted its typical large-scale canvassing program to online organizing during the pandemic.  The organization has worked to connect more than 250,000 Florida residents with the OVR system through phone calls and text messages since June 1, 2020, and also built its own landing page to route people to the OVR site.

20.    Starting on Saturday, October 3, 2020, reports emerged of Florida's OVR system experiencing outages as voters attempted to register in advance of the impending October 5th deadline.

21.    On Monday, October 5, 2020, beginning around 2 p.m., and continuing until at least 11:30 p.m., voters in Florida and civic engagement groups

assisting Florida voters began experiencing sustained problems using Florida's online voter registration system.

22.    The problems began as intermittent error messages or failures of the system to respond and culminated in several extended periods when the system was completely unavailable.

23.    The errors and malfunctions took several forms. Earlier in the day, the system became unresponsive when voters attempted to enter their address and, as a result, these voters were unable to complete the application.

24.    Other voters were unable to access the site at all, and instead were presented with one of several different error messages, including error codes 524, 502, or 503. Some voters who received these errors were eventually able to get past them and access the system after repeatedly refreshing their web browsers, but then encountered other problems.

25.    For example, Plaintiff Namphy continually received a 524 error message as he tried for several hours to access the OVR system. When he was finally able to get past that error, the system became unresponsive when he attempted to move past the "captcha"—the commonly encountered puzzle designed to verify that a person, and not a computer, is using the system—on the first page of the OVR system. As a result, Plaintiff Namphy was unable to register to vote before the deadline.

26.    Florida election officials were informed of potential problems by around 5 p.m. at the latest but incorrectly believed that the problem had been resolved.

27.    At 5:57pm, Secretary Lee tweeted that "OVR is online and working.  Due to high volume, for about 15 minutes, some users experienced delays while trying to register.  We have increased capacity.  You can register until midnight tonight…."[1]

28.    Almost as soon as Secretary Lee issued these assurances, Twitter began to explode with reports of continuing problems, many of which were subsequently picked up by the news media. For example, a Tampa Bay Times reporter was not able to access the site on a mobile phone either right after Lee sent her tweet or an hour later,[2] and at 6:43pm, Florida's Agricultural Commissioner Nikki Fried posted a screen shot displaying a "502" server error.[3]

29.    Throughout the evening, Floridians continued to tweet screen shots demonstrating their difficulty in using the site.

---

[1] https://twitter.com/FLSecofState/status/1313237000716247041.

[2] https://www.tallahassee.com/story/news/local/state/2020/10/05/florida-election-register-to-vote-registration-web-site-crash-crashed-deadline-secretary-of-state/3631938001/.

[3] https://twitter.com/nikkifried/status/1313248563519008768.

a.  6:30pm:[4]



b.  7:02pm:[5]



c.  8:36pm: From a user reporting, "We've been trying to get in for an

hour now.  I just keep refreshing browsers.  No luck so far."[6]

[4] https://twitter.com/AdrianCGallo/status/1313253815076884481/photo/1.
[5] https://twitter.com/gedma_/status/1313254147219693568/photo/1.
[6] https://twitter.com/MrsRogersHood/status/1313277026573352965.

d.  11:30pm: "STILL DOWN at almost 11:30pm":[7]



30.     State elections officials were warned well in advance that the online voter registration site was vulnerable to problems resulting from high usage. A persistent problem is that the OVR site becomes inoperative during periods of heavy usage, especially on or around the deadline to register to vote in an upcoming election, called the "book closing" day. The OVR site crashed during book closing before the November 2018 general election, in February 2020 before the PPP, and before the August 2020 primary. The site also went down on or around September 22, 2019, which was National Voter Registration Day, a period

---

[7] https://twitter.com/AshleyRoehrig/status/1313319024135110661.

during which advocacy groups and election officials encourage voters to register, generating heavy traffic.

31.     Florida is aware that there is increased traffic on book closing days, but the State has not taken steps to ensure that the site has the necessary capacity to accommodate the increased demand.  The State had every reason to prepare for increased traffic before the 2020 general election in particular, given the intense public interest in the election and the increased reliance on OVR due to self-quarantining taking place across the state as a result of the deadly coronavirus pandemic, and the state's own data showing record numbers of registrations coming in through OVR.

32.     Problems with the website, in fact, were so predictable that Florida advocacy groups began preparing for a likely early-October outage as early as July 2020.  They created a messaging toolkit to inform members and other constituents about a (at the time hypothetical) website malfunction and encourage them to persevere in their efforts to register in the face of this challenge.

33.     At least one civic engagement group, All Voting Is Local, sent a letter to Secretary Lee and Governor DeSantis in September 2020.  The organization

identified an independent vendor to stress-test the system, but the state declined to cooperate.[8]

34.    The system outages on October 5, 2020, prevented a significant number of eligible Floridians from registering to vote. Prior to the errors and outages in the OVR system, Organizational Plaintiff Florida Immigrant Coalition alone was registering 219 new voters *per hour* on the final day of registration.

35.    Voters who had started voter registration applications were unable to complete them due to the October 5, 2020 crash. Others were not even able to get started. Many whose attempts were frustrated were returning citizens, individuals with prior convictions who had completed all terms of their sentence and were reenfranchised by Amendment 4 but were then disenfranchised due to the broken OVR system.

36.    Confronted with an inoperative OVR site, some Floridians went the extra mile and traveled to their county Supervisor of Elections office, hoping to register in person. For example, Miami-Dade County's Supervisor of Elections office experienced an influx of in-person voter registration when the OVR site crashed. Not all elections offices were open for in-person voter registration after hours, however.

---

[8]    https://www.tallahassee.com/story/news/local/state/2020/10/05/florida-election-register-to-vote-registration-web-site-crash-crashed-deadline-secretary-of-state/3631938001/.

37.    The outages also substantially disrupted voter registration organizations' operations during the final push, interrupting phone banks and other outreach, and forcing organizations to divert staff time to troubleshoot and attempt to help registrants clear the burdensome hurdles erected by the faulty system. For example, Dream Defenders Communications Director Nailah Summers attempted to access the OVR site at several junctures during the evening of October 5, and encountered errors each time. She also spent time investigating the other organizations' online registration portals to ensure the problem was not with the Dream Defenders website but with the OVR system itself.  Florida Immigrant Coalition staff similarly visited other sites attempting to confirm that the problems were with the State's OVR system and not unique to the organization's technology.

38.    Organizational Plaintiffs also contacted the Secretary of State's office to request that the voter registration deadline be extended to allow frustrated voters a meaningful opportunity to register.

39.    At the time of this filing, however, despite the severe outages of the OVR system and notwithstanding that the state should have anticipated the increased demand, Defendants have failed to extend the voter registration deadline to allow the thousands of Floridians whose voter registration efforts were stymied to register to vote and to participate in the 2020 Presidential Election.

40.     Now, with the deadline past, Organizational Plaintiffs have shifted their attention to encouraging voters who were able to register to go out and vote. If the registration deadline is extended, they will shift their organizers and canvasses back to notifying voters of the extension and assisting them with registering to vote, but reaching the thousands of voters who wish to participate in November's election but were prevented from registering by the failure of the OVR system will take a significant amount of time—and the success of such efforts depends on the OVR system continuing to function during any additional registration period.

## CLAIM FOR RELIEF

### Undue Burden on the Right to Vote in Violation of the First and Fourteenth Amendment

41.     Plaintiffs reallege and incorporate by reference the allegations contained in each of the preceding paragraphs.

42.     This Court has the authority to enter a declaratory judgment and to provide  preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

43.     Under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, a court considering a challenge to a state election law "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to

vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

44.    Defendants failure to extend the deadline to register to vote means that voters who attempted to register to vote by the deadline and, through no fault of their own but because a failure of the state's OVR system, were unable to complete the registration process, will be wholly deprived of their fundamental right to vote, in violation of their rights under the First and Fourteenth Amendments. Such a deprivation constitutes a severe burden on the right to vote.

45.    The state has no compelling--or even rational--justification for failing to extend the voter registration deadline in such circumstances. Indeed, in similar circumstances in the past, the state has extended the voter registration deadline. For example, in 2018, the state extended the deadline to accommodate the closure of Supervisors of Elections' offices and DHSMV offices during the peak voter registration period due to Hurricane Michael. Given the timing of the outages—which occurred during a pandemic when OVR has become the primary method by which voters are registering and the longest of which occurred after the close of business on the last day of voter registration, when voters no longer

had the option to mail a paper voter registration application and have it postmarked by the deadline—there is no justification for failing to extend the deadline.

46.     Under these circumstances, the State's enforcement of the October 5, 2020, voter registration deadline constitutes an undue burden on the right to vote.

## **REQUEST FOR RELIEF**

Wherefore, Plaintiffs respectfully request that this Court enter judgment:

A. Preliminarily and permanently enjoining Defendants from enforcing the October 5, 2020 voter registration deadline for the November 3, 2020 General Election.

B. Ordering Defendants to extend the deadline for Floridians to register to vote in the November 3, 2020 General Election to midnight on the second day after the date of any order of the court.

C. Ordering Defendants to publicize the extension of the voter registration deadline via print media, radio, the Secretary's website, and social media to alert Floridians to the expanded opportunities to register.

D. Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable laws; and

E.  Granting such other relief as the Court deems just and proper.

Dated: October 6, 2020

Respectfully submitted,

By: */s/ Kira Romero-Craft*
          Kira Romero-Craft

JEREMY KARPATKIN
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001-3743
(202) 942-5000

CHIRAAG BAINS*
Dēmos
740 6th Street NW, 2nd Floor
Washington, DC 20001
(202) 864-2746
cbains@demos.org

STUART NAIFEH*
ADAM LIOZ*
Dēmos
80 Broad St, 4th Floor
New York, NY 10004
(212) 485-6055
snaifeh@demos.org
alioz@demos.org

KIRA ROMERO-CRAFT
(FL SBN 49927)
LatinoJustice PRLDEF
523 West Colonial Drive
Orlando, Florida 32804
(321) 418-6354
kromero@latinojustice.org

GILDA DANIELS*
JORGE VASQUEZ
JENNIFER LAI-PETERSON*
SHARION SCOTT*
JESS UNGER*
Advancement Project National Office
1220 L Street N.W., Suite 850
Washington, D.C. 20005
(202) 728-
9557gdaniels@advancementproject.org
jvasquez@advancementproject.org
jlaipeterson@advancementproject.org
sscott@advancementproject.org
junger@advancementproject.org

*Attorneys for Plaintiffs*

**Application for admission pro hac vice
forthcoming*