## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

### TALLAHASSEE DIVISION

AUGUSTA SANDINO CHRISTIAN
NAMPHY, DREAM DEFENDERS,
NEW FLORIDA MAJORITY,
ORGANIZE FLORIDA, and
FLORIDA IMMIGRANT
COALITION,

     Plaintiffs,

     v.

RON DESANTIS, in his official
capacity as Florida Governor, and
LAUREL M. LEE, in her official
capacity as Florida Secretary of State,

     Defendants.

Case No. 4:20-cv-00485-MW

### PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65(a) and (b), and for the reasons set forth in the complaint and memorandum submitted herewith, Plaintiffs respectfully move the Court for a temporary restraining order ("TRO") and a preliminary injunction enjoining Defendants DeSantis and Lee to extend the online voter registration ("OVR") to midnight on the second day after the date of

1

an TRO issued by the court, in order to ensure access to voter registration in compliance with the U.S. Constitution.

At 12:18 p.m. today, the Secretary of State issue a press release and directive extending the voter registration deadline to 7:00 p.m. today, October 6, 2020, because the OVR system had "encountered unprecedented volume and traffic the evening of October 5, 2020." That is woefully insufficient time for the state or civic engagement groups such as the organizational plaintiffs to educate voters and allow them to use the OVR system, assuming it is now running without problems, to register to vote in time for the general election.

As set forth in detail in the Plaintiffs' Memorandum of Law in Support of this Motion for a Temporary Restraining Order and Preliminary Injunction and the accompanying Declarations of individual and organizational plaintiffs, filed herewith, Plaintiffs have established that they are likely to succeed on the merits of their claims; that they will and other Florida voters will suffer irreparable harm if the Court does not issue an  injunction extending online voter registration; that the harm to Plaintiffs and voters outweighs any harm Defendant would suffer if the Court were to order the emergency preliminary relief sought by Plaintiffs; and that a temporary restraining order and preliminary injunction in this case advances the clear public interest. Accordingly, a Temporary Restraining Order should issue forthwith.

Plaintiffs respectfully request that this matter be set for telephonic oral argument on an expedited basis.

Dated: October 6, 2020

Respectfully submitted,

By:     */s/ Kira Romero-Craft*
          Kira Romero-Craft

JEFFREY A. MILLER
Arnold & Porter Kaye Scholer
3000 El Camino Real
Five Palo Alto Square | Suite 500
Palo Alto, CA 94306-2112
(650) 319-4538
jeffrey.miller@arnoldporter.com

JEREMY KARPATKIN
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
(202) 942-5000
jeremy.karpatkin@arnoldporter.com

CHIRAAG BAINS*
Dēmos
740 6th Street NW, 2nd Floor
Washington, DC 20001
(202) 864-2746
cbains@demos.org

STUART NAIFEH*
ADAM LIOZ*
Dēmos
80 Broad St, 4th Floor
New York, NY 10004
(212) 485-6055
snaifeh@demos.org
alioz@demos.org

KIRA ROMERO-CRAFT
(FL SBN 49927)
LatinoJustice PRLDEF
523 West Colonial Drive
Orlando, FL 32804
(321) 418-6354
kromero@latinojustice.org

GILDA DANIELS*
JORGE VASQUEZ*
JENNIFER LAI-PETERSON*
SHARION SCOTT*
JESS UNGER*
Advancement Project National Office
1220 L Street N.W., Suite 850
Washington, D.C. 20005
(202) 728-9557

gdaniels@advancementproject.org
jvasquez@advancementproject.org
jlaipeterson@advancementproject.org
sscott@advancementproject.org
junger@advancementproject.org

*Attorneys for Plaintiffs*

**Application for admission pro hac vice
forthcoming*

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA**

**TALLAHASSEE DIVISION**

| | |
|---|---|
| AUGUSTA SANDINO CHRISTIAN NAMPHY, DREAM DEFENDERS, NEW FLORIDA MAJORITY, ORGANIZE FLORIDA, and FLORIDA IMMIGRANT COALITION, <br><br> Plaintiffs, <br><br> v. <br><br> RON DESANTIS, in his official capacity as Florida Governor, and LAUREL M. LEE, in her official capacity as Florida Secretary of State, <br><br> Defendants. | Case No. 4:20-cv-00485-MW |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION**

The United States is in the midst of an unprecedented public health emergency that threatens not just our individual health and well-being, but also the health of the most vulnerable members of our families and communities. This emergency is coming at a time of a national election, when hundreds of millions of Americans are seeking to vote in what may be one of the most consequential elections in modern

history.  It is critical that every voter be able to exercise their right to participate in this democracy.  Recognizing the historic importance of this election, unprecedented numbers of people are registering to vote in Florida.  Due in part to the public health emergency, the vast preponderance of this wave of registrations is online, making use of Florida's online voter registration system.

Yesterday, on the deadline for voter registration and with early voting to begin in two weeks, the online registration system failed, leaving untold numbers of registrants unable to register to vote and thus unable to exercise their constitutional right to vote. No American should be denied the ability to cast a ballot because government officials who had notice of the registration system's history of crashing failed to ensure its continued operation—especially given the increased need to register online due to the deadly pandemic.

At 12:18 p.m. *today*, the Secretary of State issue a press release and directive extending the voter registration deadline to 7:00 p.m. today, October 6, 2020, because the OVR system had "encountered unprecedented volume and traffic the evening of October 5, 2020." SOS Directive 2020-20, at 1. This despite the Secretary's assurance to voters that its OVR system is "safe" and "secure." See Frequently Asked Questions, https://dos.myflorida.com/media/703532/ovr-faq-english-202000920.pdf, at 2. The Secretary acknowledges that "Floridians planning to register to vote through the website before the book closing deadline

2

under section 97.055(1)(a) may have experienced difficulties." SOS Directive 2020-02, at 1.

The Secretary's extension to 7:00 p.m. today is woefully insufficient time to educate voters and allow them to use the OVR system, assuming it is now running without problems, to register to vote in time for the general election. Organizational Plaintiffs need time to restart their voter engagement and assistance operations, brief their canvassers and volunteers, and reach out to voters. Voters who are busy with work and caregiving responsibilities need additional time to make the opportunity to register to vote at all meaningful.

The State of Florida, in this time of emergency, has failed to meet its obligation to allow Floridians to register to vote. As a result, without emergency relief ordered by this Court, numerous Floridians, including individual Plaintiff and organizational Plaintiffs' members and constituents, will be entirely deprived of the opportunity to vote in the November general election, in violation of their rights under the First and Fourteenth Amendments to the U.S. Constitution.

## FACTUAL BACKGROUND

### I. The Parties

#### A. Plaintiffs

Plaintiffs Namphy is a Florida resident and first-time voter who has been prevented from registering to vote by the breakdown of the online voter registration

("OVR") system. Mr. Namphy is a resident of Broward County, Florida who understood that he should register online rather than in person because of COVID. Namphy Decl. at ¶ 6. He attempted to register to vote October 5 starting about 8:30 p.m. but was unable to register due to system errors.  Namphy Decl. at ¶ 7-8.  He tried for nearly four hours to register via the OVR system, but was not able to register to vote before the midnight deadline due to OVR system failures.  *Id.* at ¶¶ 8-10, 13-14. Mr. Namphy will therefore be unable to vote in the November General Election on Tuesday, November 3, 2020 if the relief sought in this motion is not granted.

Organizational plaintiffs are non-profit organizations whose missions and/or members were interfered with or affected by Defendants' failure to properly maintain the OVR and failure to extend the voter registration deadline to a reasonable date and time. The actions and omissions hinder the organizations' efforts to secure voter participation and harm their members who need to register to vote or update their voter registrations.

Plaintiff New Florida Majority, Inc. ("NewFM") is a Florida nonprofit corporation and membership organization that works with individual members and organizations across the State of Florida engaged in civic and democratic endeavors to assist underserved communities in voter registration, voter education and get out the vote efforts. NewFM suspended all of its in-person voter registration operations immediately following the March 17, 2020, Presidential Preference Primary

("PPP"), as Florida went into lockdown due to the COVID-19 pandemic. Florida's OVR site became the organization's only option for its voter registration work. Mercado Decl. ¶ 7.

Plaintiff Dream Defenders is a Florida nonprofit corporation. Dream Defenders conducts voter registration and voter engagement work throughout the State of Florida, and particularly in 10 counties, including Alachua, Broward, Escambia, Hillsborough, Leon, Miami-Dade, Orange and Pinella Counties. Summers Decl. ¶ 2. Due to the safety risks posed by the COVID-19 pandemic, Dream Defenders modified its voter registration program to urge people to register on the State's OVR system, rather than conduct an in-person voter registration campaign. Dream Defenders diverted approximately $200,000 from its in-person program to a phone bank urging Floridians to register to vote using the OVR portal. The membership of Dream Defenders includes college students who have been displaced from their schools due to the coronavirus pandemic.

Plaintiff Organize Florida is a community-based, nonprofit member organization whose membership consists of low- and moderate-income people dedicated to the principles of social, racial, and economic justice and the promotion of an equal and fair Florida for all. Organize Florida's major campaigns have included supporting children and families and increasing Latinx voter turnout. Due to the COVID-19 pandemic, Organize Florida had to shift its planned in-person voter

registration campaign to focus instead on urging Floridians to register to vote using the OVR system.

Plaintiff, Florida Immigrant Coalition ("FLIC") is a Florida nonprofit corporation, representing over 66 diverse dues-paying member organizations in over twenty Florida counties, including community-based organizations committed to empowering their members and communities around civil engagement. FLIC's mission is to amplify the power of immigrant communities, to address the root causes of inequality, and to defend and protect basic human rights, including the ability to labor, live and love without fear. To achieve its goal, FLIC supports civic participation by encouraging naturalization, providing voter registration assistance, and leading civic engagement efforts throughout the state. FLIC had to revise its voter registration initiatives from in person voter registration to use of the OVR system due to the COVID-19 pandemic.

B. Defendants

Defendants are Florida election officials, sued in their official capacity for their failure to take action necessary to prevent the unconstitutional deprivation of Plaintiffs rights. Defendant Ron DeSantis is sued in his official capacity as Governor of the State of Florida. As Governor of Florida, Defendant DeSantis is the State's chief executive officer and is responsible for the administration of all state laws, including those pertaining to elections and voter registration.

6

Defendant Laurel M. Lee is sued in her official capacity as Florida Secretary of State, for her failure to maintain the proper functioning of the OVR and her failure to extend the deadline for registering to vote past 7:00 p.m. on October 6, thus unconstitutionally depriving Plaintiffs of their right to vote. Pursuant to Florida Statute § 97.012, the Secretary of State is the chief elections officer of the State and is responsible for the administration of state laws affecting voting, including overseeing and administering the state's system of voter registration.   F.S. §§ 97.012(7), (9) & (11).

## II.   Florida's Online Voter Registration System

In the time of COVID-19, registering to vote online is not just one option among many but has become the safest way to register to vote in Florida, and the only way to register to vote that does not force Floridians to choose between exercising their constitutional right to vote and putting their health at risk.  In 2018 and 2019, OVR accounted for approximately 17% and 8.5%, respectively, of all new voter registrations submitted in the state. In 2020, the COVID-19 pandemic has significantly curtailed other methods of registration, leading Floridians to rely much more heavily on OVR. As of August 31, 2020, 32% of new registrations the state had received came from the OVR system. *See* Florida Division of Elections, "Voter Registration – Method and Location," https://dos.myflorida.com/elections/data-

statistics/voter-registration-statistics/voter-registration-reportsxlsx/voter-registration-method-and-location/ (last visited Oct. 6, 2020).

The Secretary of State's office states that OVR is "secure and convenient", "available 24 hours a day, 7 days a week" and "can be used with Internet access, from anywhere in the world."[1]  The deadline for voter registration is 29 days before an election, F.S. 97.055(1)(a).  For the November 3 General Election, the deadline was October 5, 2020.  Registrants were entitled to use the OVR system until midnight October 5 to register for the November General Election.[2]

The OVR has been prone to system failures and shutdowns since its inception in 2018, including in the lead up to the November 2018 general election, prior to the registration deadline for the PPP in March 2020, and before the August 2020 primary.  Mercado Decl. at ¶¶ 9-12; Porta Decl. ¶¶ 8-9.  Users found that the OVR system was also unavailable for periods of time on October 3, 2020.  Porta Decl. ¶ 12.

In the afternoon of October 5, the last day for voters to register to vote in the November 3, 2020 Presidential Election, and a day with typically very high voter registration volume, the OVR system experienced outages of several hours, leaving eligible voters unable to register to vote on the evening of the voter registration

---

[1] RegistertoVoteFlorida.gov, Frequently Asked Questions (available at https://dos.myflorida.com/media/703532/ovr-faq-english-202000920.pdf at page 1.
[2] *Id.* at 3.

deadline. Individuals seeking to register, including individual Plaintiff and organizational Plaintiffs' members and the Floridians they serve, were unable to do so and received an error message when they tried. Lioz Decl. ¶¶ 2, 5-6. FLIC's experience and understanding is that the outage occurred for the period at least from 3:30 pm to 6:00pm, and again from 8:15pm to 9:37pm, lasting a total of at least 3 1/2 hours. Rodriguez Decl. at ¶ 6. Dream Defenders' clients found the system was nonfunction at 7:00 p.m., and Dream Defenders staff found the system down at 7:17 p.m. 8:14 p.m., and 9:59 p.m. Summers Decl. ¶¶ 9-10. The outage may have lasted as long as five hours or even longer. Porta Decl. at ¶ 17.

FLIC estimates that it was registering about 219 voters per hour at the time the system crashed. Rodriguez Decl. at ¶ 6. Many whose attempts were frustrated were returning citizens, individuals with prior convictions who had completed all terms of their sentence and were re-enfranchised by Amendment 4 but were then disenfranchised due to the broken OVR system. Mercado Decl. at ¶ 13. In light of the numerous organizations registering voters on this final day of registration, several thousand voters were likely impacted by the October 5 outage of the OVR.

Numerous voters tried to register in person after it became apparent that the OVR system was inoperative. There were long lines after hours at the Palm Beach County Supervisor of Elections Office, and the Miami-Dade County Supervisor of Elections office had an "in-flux of in-person" voter registration after the OVR

9

system crashed.  Mercado Decl. at ¶¶ 17-20.  However, the OVR system crashed after normal business hours, resulting in registration applicants with nowhere to go to register in person.

Even after the system went back online, voters struggled to use it in the time remaining before the midnight deadline. For example, Plaintiff Namphy continually received a 524 error message—the code for when a website fails to respond and the connection then times out—as he tried for several hours to access the OVR system. When he was finally able to get past that error, the system became unresponsive when he attempted to move past the "captcha"—the commonly encountered puzzle designed to verify that a person, and not a computer, is using the system—on the first page of the OVR system. He was unable to register to vote before the deadline. Namphy Decl. at ¶¶ 5-11.

On October 5, after the system failures had become apparent, Plaintiffs through counsel requested that the Secretary of State extend the OVR deadline.  As of the filing of Plaintiffs' complaint, the Secretary of State has not responded to this request.

At 12:18 p.m. on October 6, 2020, the Secretary issued Directive 2020-02 acknowledging that the "Department of State's online voter registration website encountered unprecedented volume and traffic the evening of October 5, 2020. Consequently, some Floridians planning to register to vote through the website

10

before the book closing deadline under section 97.055(1)(a) may have experienced difficulties." SOS Directive 2020-02. The Secretary extended the voter registration deadline to 7:00 p.m. on October 6—a mere hours after the directive become public, and a window that will not work for voters due to caregiving, employment, and other responsibilities.

### LEGAL STANDARD

Plaintiffs seek a Temporary Restraining Order ("TRO") and a Preliminary Injunction ("PI") pursuant to Federal Rule of Civil Procedure 65 (a) and (b),  to enjoin defendants to extend online voter registration to midnight on the second day after issuance of a TRO or PI, to ensure that Floridians who sought to register to vote November 3, 2020 will be able to do so.

To prevail on a motion for a TRO and PI, a movant must establish: (1) a substantial likelihood of success on the merits; (2) that the movant will suffer irreparable injury in the absence of the requested injunctive relief; (3) that the threatened harm outweighs the harm that the nonmovant would suffer if the injunctive relief is issued; and (4) that the injunctive relief would not be adverse to the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (setting out the standard for a preliminary injunction); *Windsor v. United States*, No. 09-13998, 2010 WL 1999138, at *4 (11th Cir. May 10, 2010) (noting that the standard for a temporary restraining order is identical to the standard

for a preliminary injunction). The purpose of immediate preliminary relief "is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *United States v. Alabama*, 791 F.2d 1450, 1459 (11th Cir. 1986) (affirming grant of a preliminary injunction).

## ARGUMENT

### I.   Plaintiffs Are Likely to Succeed on the Merits of Their Claims

Plaintiffs are likely to succeed on the merits of their claim that the shutdown of the OVR during several critical hours on the final day of voter registration places an undue burden on their right to vote in violation of the First and Fourteenth Amendments to the Constitution by severely burdening and potentially denying thousands of eligible Florida citizens the opportunity to cast a ballot in the 2020 General Election.

Voting is "the beating heart of democracy." *League of Women Voters v. Detzner*, 314 F. Supp. 3d 1205, 1215 (N.D. Fla. 2018).  The right to vote is a "precious" and "fundamental" right.  *Harper v. State Board of Elections,* 383 U.S. 663, 670 (1966).  Voting is "of the most fundamental significance under our constitutional structure."  *Burdick v. Takushi,* 504 U.S. 428, 433 (1992) (internal citations and quotes omitted).

In the Eleventh Circuit, a court must evaluate the constitutionality of an election law challenged under the First and Fourteenth Amendments by applying the

12

*Anderson-Burdick* test. *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick,* 504 U.S. at 434. That test requires the court to weigh the character and magnitude of the asserted First and Fourteenth Amendment injury against the state's proffered justifications for the burdens imposed by the rule, taking into consideration the extent to which those justifications require the burden to plaintiffs' rights. *See Anderson*, 460 U.S. at 789; *Burdick*, 504 U.S. at 434.

A law that severely burdens the right to vote must be narrowly drawn to serve a compelling state interest. *Burdick*, 504 U.S. at 434; *Democratic Executive Committee of Fla.*, 915 F.3d at 1318. Even for a law that "imposes only a slight burden on the right to vote, relevant and legitimate interests of sufficient weight still must justify that burden." *Democratic Executive Committee of Fla.*, 915 F.3d at 1318-19 (citing *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1352 (11th Cir. 2009)). The more a challenged law burdens the right to vote, the stricter the scrutiny to which the law is subjected. *Democratic Executive Committee of Fla.*, 915 F.3d at 1319 (citing *Stein v. Ala. Sec. of State*, 774 F.3d 689, 694 (11th Cir. 2014) (stating that challenges to state election laws arising solely under the First Amendment are governed by *Anderson v. Celebrezze*)).

In *Florida Democratic Party v. Scott*, this court explained, in the context of Hurricane Matthew forcing voters to evacuate the State, that there is no Florida statutory provision allowing for an extension of the voter registration deadline in the

13

event of an emergency, and that without such a provision, Florida law "completely disenfranchises thousands of voters, and amounts to a severe burden on the right to vote." 215 F. Supp. 3d. 1250, 1257 (N.D. Fla. 2016).

This is precisely the situation here. The OVR shutdown has placed a severe burden on the right to vote by disenfranchising thousands of voters. Despite Defendant Lee's own assertion that the OVR is available "24 hours a day, seven days a week", the State has not kept its commitment to maintain the OVR system to enable voters to register, and has not extended the OVR deadline to compensate for the loss of several critical hours during the most heavily trafficked, final day of voter registration.  Defendant Lee is responsible for maintaining the OVR system and holds it out to all Floridians as a way to safely and efficiently register to vote until midnight on October 5.  For thousands of Floridians seeking to vote in this year's general election, like Plaintiff Namphy, the failure of the OVR system has totally denied their ability to vote since it is too late to register to vote any other way. Indeed, some prospective registrants made herculean efforts to register by the deadline, traveling to the County Boards of Elections after hours to try to register. Mercado Decl. at ¶¶ 14-17 While some County offices remained open late to accept registrations, most County offices were not open after normal business hours, leaving would be registrants with no recourse. Like the voters displaced in Hurricane Matthew, "because those aspiring eligible voters could not register, they could not

14

vote in the upcoming election." *Scott,* 215 F. 3d at 1257.  As in *Scott,* the state's failure to extend the voter registration deadline past 7:00 p.m. today "completely disenfranchises thousands of voters and amounts to a severe burden on the right to vote." *Id.*

Other courts considering restrictions in voter registration deadlines have similarly found that limiting voter registration at the time of the COVID pandemic constitutes a severe burden on the right to vote.  *See, e.g., Democratic Nat'l Comm. V. Bostelmann,* No. 20-CV-249-WMC, 2020 WL 5627186 at *17 (W.D. Wis. Sept. 21, 2020) (extending Wisconsin's statutory voter registration from October 14 to October 21); *Mi Familia Vota v. Hobbs,* No. CV-20-01903-PHX-SPL (D. Ariz. Oct. 5, 2020) (extending voter registration deadline from October 5 to October 23).  The logic of these decisions, and of the decision in *Scott,* applies with even greater force here, since the state's failure here is not merely its general failure to extend the registration deadline due to account for the COVID pandemic, but specifically to the state's failure to extend the deadline to a reasonable date and time in an OVR system heavily relied upon due to COVID that crashed at the critical time when thousands of voters were relying on it to vindicate their right to vote.

The burden the state's failure to extend OVR places on thousands of Floridians' right to vote greatly outweighs any proffered justifications the State could put forward, whether under a more stringent *Anderson-Burdick* analysis akin

to strict scrutiny or under a lower standard. And as this court explained in *Florida Democratic Party v. Scott*, even assuming the State of Florida could point to a valid compelling interest, "it is nonsensical to argue that it is narrowly tailored to that interest" in a circumstance where the state's failure totally denies eligible voters the opportunity to cast a ballot. *Id.*

Similarly, under the *Anderson-Burdick* standard, the State cannot argue that some limitation requires it to burden the constitutional rights of aspiring eligible voters in these circumstances. Even under a lower standard of review, it "is wholly irrational in this instance for Florida to refuse to extend the voter registration deadline when the State already allows the Governor to suspend or move the election date due to an unforeseen emergency." *Scott*, 215 F. Supp. 3d at 1257 (citing § 101.733, Fla. Stat.).

Plaintiffs' claim is even stronger in this case because the State had ample notice of the vulnerabilities of its OVR system, given its prior crashes. And the State had every reason to strengthen the system and prepare for increased traffic before the 2020 general election in particular, given the intense public interest in the election and the increased reliance on OVR due to self-quarantining taking place across the state as a result of the deadly coronavirus pandemic.

Under these circumstances, the State's failure to extend the OVR deadline for two days constitutes an undue burden on the right to vote.  As a result, Plaintiffs are likely to succeed on the merits.

## II.   In the Absence of a Restraining Order, Plaintiffs Will Suffer Irreparable Harm by Being Permanently Denied the Right to Vote in the November General Election.

Plaintiffs will suffer irreparable injury if a temporary restraining order is not granted. The State has not extended the OVR deadline to compensate for the lost time, essentially denying the right to vote to thousands of Floridians, including the Individual Plaintiff and Organizational Plaintiffs' members and constituents.

Because the OVR breakdown will render otherwise eligible voters wholly unable to vote, this is not a case where denial of relief would be "a mere inconvenience" to Plaintiffs, declarants, and organizational plaintiffs' members. *Scott,* 215 F. Supp.3d at 1258.  Once the election passes, "there can be no do-over and no redress."  *League of Women Voters of N.C. v. North Carolina,* 769 F.3d 224, 247 (4th Cir. 2014).  Denial of relief would leave people who had sought to register to vote in the time and manner prescribed by the state unable to vote, due solely to the mismanagement by the state of the OVR system and the state's unwillingness to extend the voter registration deadline.

## III.   The Harm to Plaintiffs Outweighs Any Burden to the State in Accommodating the Breakdown in the OVR System.

17

If Florida does not provide the requested relief, Plaintiffs and thousands of Florida voters will be stripped of their most fundamental freedom—the right to vote. Because any burden on Defendants is certainly outweighed by the civic consequences of not taking prompt action, the balance of hardships strongly favors Plaintiffs.

Plaintiffs' request that this court order two additional days of OVR is modest and reasonable. At least one day is necessary to compensate for the many hours during which the OVR system was unavailable during the peak registration period on October 5. At least one additional day is necessary for Organizational Plaintiffs (and the State) to educate voters that they have additional time to register and should try again. In Plaintiffs' experience, reengaging canvassers and volunteers to staff phone banks and briefing them about the extension, preparing and conducting outreach to voters about any extension, and motivating frustrated would-be registrants to revisit the broken OVR page will all take time. *See* Summers Decl. at ¶ 15; Mercado Decl. at ¶ 18; Porta Decl. at 18-20.

Plaintiffs submit it is prudent to continue OVR through midnight on the second day after a court order to minimize confusion, as voters are familiar with OVR deadlines being midnight deadlines. Everyday responsibilities such as employment and caregiving, coupled with the added stress of navigating life during

a deadly pandemic, make the minor extension of the deadline to 7:00 p.m. today unreasonable and inadequate to protect the fundamental right to vote.

As this Court said in another state emergency "[o]f course, the State of Florida has the ability to set its own deadlines and has an interest in maintaining those deadlines … [b]ut it would be nonsensical to prioritize those deadlines over the right to vote, especially given the circumstances here." *Scott*, 215 F. Supp. 3d at 1258. In that case, this court was referring to Hurricane Matthew, which ravaged Florida and left many Florida residents evacuated outside of the state. Here, the COVID-19 emergency is rendering many thousands of Floridians dependent on the OVR system to register to vote.  Under these conditions it is critical that the State remedy the shutdown of the OVR system by extending the voter registration deadline to provide sufficient time for voters to make meaningful use of it.

Any burden the state might experience in having to extend the OVR deadline is limited. A federal district court's recent order in Arizona is instructive. Arizona, like Florida, set October 5 as its deadline for voter registration.  But the court in Arizona found the administrative burdens asserted by the state unpersuasive, since 31 other states have later voter registration deadlines, and many of these states allow election-day registration. *Mi Familia Vota,* No. CV-20-01903-PHX-SPL at 8. While Florida may have some discretion to establish voter registration deadlines within certain limits, it cannot credibly assert that extending the deadline by a few days to

address a system shutdown during a critical high-traffic period will pose a significant administrative burden. Indeed, under federal law, Florida must process all voter registration applications submitted by mail that are postmarked by the deadline, meaning that given current estimates of postal delivery times, registrations will continue to be processed for up to seven days after the deadline. 52 U.S.C. § 20507(a)(1)(B).

## IV.     The Requested Relief Is in the Public Interest Because It Will Safeguard Eligible Florida Voters' Fundamental Right to Vote.

Defendants cannot provide any colorable justification for their failure, in light of the COVID-19 pandemic, and in light of their own failure to properly manage the OVR, to extend the OVR deadline to compensate for the lost time. The requested relief safeguards eligible Florida voters' fundamental right to vote, which by definition promotes the public interest. *E.g.*, *League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1167 (N.D. Fla. 2012) ("The vindication of constitutional rights and the enforcement of a federal statute serve the public interest almost by definition.").

## CONCLUSION

For the foregoing reasons, this Court should enter a Temporary Restraining Order awarding the requested relief.

Dated: October 6, 2020                    Respectfully submitted,

                                          By:   */s/ Kira Romero-Craft*
                                                Kira Romero-Craft

J JEFFREY A. MILLER
Arnold & Porter Kaye Scholer
3000 El Camino Real
Five Palo Alto Square | Suite 500
Palo Alto, CA 94306-2112
(650) 319-4538
jeffrey.miller@arnoldporter.com

EREMY KARPATKIN
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
(202) 942-5000
jeremy.karpatkin@arnoldporter.com

CHIRAAG BAINS*
Dēmos
740 6th Street NW, 2nd Floor
Washington, DC 20001
(202) 864-2746
cbains@demos.org

STUART NAIFEH*
ADAM LIOZ*
Dēmos
80 Broad St, 4th Floor
New York, NY 10004
(212) 485-6055
snaifeh@demos.org
alioz@demos.org

KIRA ROMERO-CRAFT
(FL SBN 49927)
LatinoJustice PRLDEF
523 West Colonial Drive
Orlando, FL 32804
(321) 418-6354
kromero@latinojustice.org

GILDA DANIELS*
JORGE VASQUEZ*
JENNIFER LAI-PETERSON*
SHARION SCOTT*
JESS UNGER*
Advancement Project National Office
1220 L Street N.W., Suite 850
Washington, D.C. 20005
(202) 728-9557
gdaniels@advancementproject.org
jvasquez@advancementproject.org
jlaipeterson@advancementproject.org
sscott@advancementproject.org
junger@advancementproject.org

*Attorneys for Plaintiffs*

*\*Application for admission pro hac vice forthcoming*

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to Northern District of Florida Local Rule 7.1(F), I certify that, according to the word count of the word processing system used to prepare this document, the foregoing memorandum contains 4,490 words.

*/s/ Kira Romero-Craft*
Kira Romero-Craft
